BLANK ROME LLP
Seth J. Lapidow, Esq.
Michael A. Rowe, Esq.
The Chrysler Building
405 Lexington Avenue
New York, New York 10174-0208
(212) 885-5000
*Attorneys for defendant Andrew Cader*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WARREN LICHTENSTEIN, <br><br> Plaintiff, <br><br> v. <br><br> ANDREW CADER, <br><br> Defendant. | Index No.: 13 cv 2690 (LAK) |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY PLAINTIFF'S CLAIMS IN FAVOR OF A FIRST FILED HONG KONG ACTION AND BECAUSE THEY FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

<u>On the Brief</u>:
Seth J. Lapidow, Esq.
Michael A. Rowe, Esq.

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

PRELIMINARY STATEMENT ......................................................................... 1

STATEMENT OF FACTS ................................................................................. 1

    A.    Mr. Lichtenstein And Ms. Bond And Their Daughter .................................. 1

    B.    Ms. Bond Sues Mr. Lichtenstein In The United Kingdom ............................. 1

    C.    Mr. Lichtenstein Sues Ms. Bond in Hong Kong ....................................... 2

    D.    Mr. Lichtenstein Sues Mr. Cader In This Action ..................................... 4

LEGAL ARGUMENT ....................................................................................... 5

I.    THIS COURT SHOULD DISMISS THIS ACTION OR, IN THE
ALTERNATIVE, STAY THIS ACTION IN FAVOR OF THE HONG KONG
ACTION ........................................................................................................... 5

II.    THIS COURT SHOULD DISMISS THIS ACTION BECAUSE IT IS AN
IMPROPER ATTEMPT TO COLLATERALLY ATTACK OF FOREIGN
COURT DECISION ........................................................................................ 9

III.    THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN
BE GRANTED AND SHOULD BE DISMISSED .......................................... 10

    A.    The Complaint Fails To Satisfy The Pleading Requirements Set Forth By The
Supreme Court And Should Be Dismissed ..................................... 10

    B.    Count Two Of The Complaint Fails To State A Claim For Aiding And
Abetting Fraud And Should Be Dismissed ...................................... 13

    C.    Count One Of The Complaint Fails To State A Claim For Conspiracy To
Commit Fraud And Should Be Dismissed ....................................... 18

CONCLUSION ................................................................................................ 20

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Advantage Int'l Management v. Martinez,*
1994 U.S. Dist. LEXIS 12535 (S.D.N.Y. Sept. 2, 1994) ................................ 5

*Agostini v. Sobol,*
757 N.Y.S.2d 555 (1st Dep't 2003) ................................................ 19

*Altman v. Altman,*
542 N.Y.S.2d 7 (1st Dep't 1989) ................................................ 9

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed. 2d 868 (2009) ................ 11, 12

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed. 929 (2007) ................ 11, 12

*Billard v. Rockwell Int'l Corp.,*
683 F.2d 51 (2d Cir. 1982) ................................................ 13

*Bridgestone/Firestone v. Recovery Credit Servs.,*
98 F.3d 13 (2d Cir. 1996) ................................................ 14

*Caspian Invest., Ltd. v. Vicom Holdings, Ltd.,*
770 F. Supp. 880 (S.D.N.Y. 1991) ................................ 5, 6, 8, 9

*Chemtex, LLC v. St. Anthony Enters.,*
490 F. Supp. 2d 536 (S.D.N.Y. 2007) ................................ 16, 17

*Chenu v. Board of Trs.,*
212 N.Y.S.2d 818 (1st Dep't 1961) ................................ 9

*Churchill Financial Cayman, Ltd. V. BNP Paribas,*
944 N.Y.S.2d 116 (1st Dep't 2012) ................................ 17

*DirecTV Latin Am., LLC v. Park 610, LLC,*
691 F. Supp. 2d 405 (S.D.N.Y. 2010) ................................ 18

*Dragon Capital Partners L.P. v. Merrill Lynch Capital Servs.,*
949 F. Supp. 1123 (S.D.N.Y. 1997) ................................ 5, 6, 7, 8

*Fezzani v. Bear, Stearns & Co.,*
592 F. Supp. 2d 410 (S.D.N.Y. 2008) ................................ 16

*Filler v. Hanvit Bank,*
2003 U.S. Dist. LEXIS 15950 (S.D.N.Y. Sept. 12, 2003) ................ 18

*In Re Agape Litigation,*
    773 F. Supp. 2d 298 (E.D.N.Y. 2011) ...................................................................15, 18

*LeFebvre v. New York Life Ins. And Annuity Corp.,*
    625 N.Y.S.2d 695 (3rd Dep't 1995) .........................................................................18, 19

*Lerner v. Fleet Bank, N.A.,*
    459 F.3d 273 (2d Cir. 2006)..............................................................13, 14, 15, 16

*Lewis v. Rosenfeld,*
    138 F. Supp. 2d 466 (S.D.N.Y. 2001) ...........................................................................19

*Missigman v. USI Northeast, Inc.,*
    131 F. Supp. 2d 495 (S.D.N.Y. 2001) ...........................................................................18

*MLSMK Inv. Co. v. JP Morgan Chase & Co.,*
    651 F.3d 268 (2d Cir. 2011)..........................................................................................12

*Morgan v. Prudential Group Inc.,*
    81 F.R.D. 418 (S.D.N.Y. 1978).....................................................................................17

*National Westminster Bank USA v. Weksel,*
    511 N.Y.S.2d 626 (1st Dep't 1987) ..........................................................................13, 14

*O'Brien v. National Property Analysts Partners,*
    936 F.2d 674 (2d Cir. 1991)..........................................................................................15

*Reese v. McGraw-Hill Cos.,*
    2012 U.S. Dist. LEXIS 83753 (S.D.N.Y. Mar. 30, 2012)..........................................14, 15

*Rosner v. Bank of China,*
    349 Fed. Appx. 637 (2d Cir. 2009).........................................................................13, 16

*Scottish Air Int'l v. British Caledonian Group, PLC,*
    81 F.3d 1224 (2d Cir. 1996).......................................................................................7, 8

*Shemtob v. Shearson, Hammill & Co.,*
    448 F.2d 442 (2d Cir. 1971)..........................................................................................13

*Snyder v. Puente De Brooklyn Realty Corp.,*
    746 N.Y.S.2d 517 (3rd Dep't 2002) ..............................................................................19

*Stanfield Offshore Leveraged Assets, Ltd. v. Metropolitan Life Ins. Co.*
    *Credit Suisse First Boston (USA),*
    83 N.Y.S.2d 486 (2009)................................................................................................17

*Stern v. Leucadia Nat'l Corp.,*
    844 F.2d 997 (2d Cir. 1988)..........................................................................................16

*Tamimi v. Tamimi*,
    328 N.Y.S.2d 477 (2d Dep't 1972) ..................................................................................... 9

STATUTES

CPLR 3016(b) ............................................................................................................................. 13

Fed.R.Civ.P. 9(b) ....................................................................................................... 13, 14, 15, 17, 18

Fed.R.Civ.P. 44.1 ........................................................................................................................ 2

OTHER AUTHORITIES

Moore's Federal Practice, ch 44.1, *Determining Foreign Law* §44.1.03(1) (3d ed. 2013) ............................. 2

## INTRODUCTION

Defendant Andrew Cader respectfully submits this memorandum of law in support of his motion to dismiss or, in the alternative, to stay plaintiff Warren Lichtenstein's claims in this action in favor of a previously filed Hong Kong action and because they fail to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

Mr. Lichtenstein is unhappy with the level of support the Hong Kong Court has ordered he provide to his daughter.  Having brought that action in Hong Kong and unable so far to get that Court to change its mind, he brings this action in a collateral attack on that obligation here.  In this action, Mr. Lichtenstein asks this Court to substitute its judgment about how much support he must provide to his daughter for that of the Hong Kong Court.  Mr. Lichtenstein seeks this relief notwithstanding that the child support order is being actively litigated in Hong Kong and that the same scanty allegations of fraud made here have been made there.  Mr. Lichtenstein's claims against Mr. Cader are neither properly before this Court nor properly pleaded and should be dismissed.

## STATEMENT OF FACTS

### A.  MR. LICHTENSTEIN AND MS. BOND AND THEIR DAUGHTER

Mr. Lichtenstein and Annabelle Bond, who were previously engaged but never married, are the parents of a five-and-one-half year old daughter.  (Complaint at ¶12, the Complaint is Ex. A to the May 9, 2013 Declaration of Seth J. Lapidow ("Lapidow Dec.")).  Mr. Lichtenstein and Ms. Bond ended their relationship in 2007.  (*Id.*).

### B.  MS. BOND SUES MR. LICHTENSTEIN IN THE UNITED KINGDOM

In 2008, Ms. Bond sued Mr. Lichtenstein in the United Kingdom seeking, among other things, child support for their daughter.  (Complaint at ¶16).  In 2011, the United Kingdom Court issued a child support award.  (*Id.* at ¶17).

1

### C. Mr. Lichtenstein Sues Ms. Bond in Hong Kong

In 2012, Mr. Lichtenstein sued Ms. Bond in Hong Kong thereby invoking the jurisdiction of that Court to decide the issues between him and Ms. Bond, including the appropriate level of support for their daughter. (Complaint at ¶25). Under Hong Kong law, the Guardianship of Minors Ordinance Cap 13 (the "GMO") governs circumstances involving parents of a child who were never married to one another. (A copy of Section 10 of the GMO is Ex. B to the Lapidow Dec.).[1] The GMO, specifically Section 10, authorizes the Court to make orders for custody and maintenance for a child upon application by either parent. (*Id.*). Section 10 empowers the Court to make orders for the benefit of the minor, including custody awards, lump sum and periodical support payments, and transfers and settlements of property. (*Id.*).

Upon application by either parent under Section 10, both parents are required to submit a sworn a Form E Financial Statement. (A copy of a Form E Financial Statement is Ex. C to the Lapidow Dec.). When submitting a Form E Financial Statement, each parent is required to provide the following information: (i) general background information, including date of birth, employment history, residence, and circumstances regarding the parents' relationship and their relationship with the child; (ii) assets and liabilities; (iii) income; (iv) monthly expenses; (v) other pertinent information that the parties believe that the Court should consider when deciding support payments; (vi) prayer for relief sought; and (vii) a schedule of attachments, including mortgages, bank statements, financial statements, investments, and tax returns. (*Id.*). When rendering a decision under the GMO,

---

[1] Fed.R.Civ.P. 44.1 provides that a "party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source ... whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed.R.Civ.P 44.1. Mr. Cader accordingly, pursuant to that rule, provides notice of his intention to raise an issue about Hong Kong law and respectfully submits copies of the law about which he raises an issue. Moore's Federal Practice, ch 44.1, *Determining Foreign Law* §44.1.03(1) (3d ed. 2013) (notice "is effected ... by the inclusion of summaries of the applicable foreign statutes in ... memorandum of law [and] attached as exhibits to motions.).

2

including the level of support payments, the Court will consider the financial means of both parents. (Section 10 of the GMO).

After Mr. Lichtenstein invoked the jurisdiction of the Hong Kong Court, both he and Ms. Bond were required to submit sworn Form E Financial Statements. (Complaint at ¶26). Ms. Bond identified various loans made to her by Mr. Cader. (*Id.*). Under Hong Kong law, specifically, Section 77 of the Matrimonial Causes Rules, the parties can raise questions about one another's disclosures and can request further information and documents from one another. (A copy of Section 77 of the Matrimonial Causes Rules is Ex. D to the Lapidow Dec.). Section 77(4) of the Matrimonial Causes Rules provides that:

> Any party to an application for ancillary relief may by letter require any other party to give further information concerning any matter contained in any affidavit filed by or on behalf of that other party or any other relevant matter, or to furnish a list of relevant documents or to allow inspection of any such document, and may, in default of compliance by such other party, apply to the court for directions.

(*Id.*).

Mr. Lichtenstein is thus free in the Hong Kong forum to pursue the factual circumstances relating to Ms. Bond's financial position. (Section 77 of the Matrimonial Causes Rules). And Mr. Lichtenstein has raised questions about the loans listed on Ms. Bond's Form E Financial Statement in the Hong Kong action. (Complaint at ¶26).[2] Notwithstanding those questions, the Hong Kong Court entered an interim order of support in an amount that it considered appropriate. (Complaint at ¶28). Following this interim order, Mr. Lichtenstein requested and was granted transfer of the matter to the Hong Kong High Court where the matter is now ongoing. (A copy of Mr. Lichtenstein's May 7, 2013 letter without exhibits to this Court is Ex. E to the Lapidow Dec.). Indeed, as Mr. Lichtenstein told this Court, the level of child support is subject to review in Hong

---

[2] Mr. Lichtenstein refers to these payments as (the "Cash Gifts" and "Lease Payments"). (Complaint at ¶26).

3

Kong and will not become final until after the parties fully litigate the issue in accordance with Hong Kong procedural and substantive law. (*Id.*).

The Hong Kong Court will hold a first directions hearing -- a case management conference -- at which it will give directions with regard to the progress of the case to trial. (Section 77 of the Matrimonial Causes Rules). At the directions hearing, each party can request that the Court order disclosure of financial information from the other party and the Court may address the filing and hearing of evidence to be used by either party:

> At the hearing of an application for ancillary relief the court shall, subject to rules 78, 80 and 80A, investigate the allegations made in support of and in answer to the application and may take evidence orally and may order the attendance of any person for the purpose of being examined or cross-examined, and may at any stage of the proceedings order the discovery and production of any document or require further affidavits.

(Section 77(5) of the Matrimonial Causes Rules).

The Rule on its face sets no restriction on what type of information either parent can request from one another. (Section 77 of the Matrimonial Causes Rules). Thus, Mr. Lichtenstein has the right to seek any information he wishes concerning any loans that Ms. Bond has received from Mr. Cader. (*Id.*). The Hong Kong High Court to which Mr. Lichtenstein transferred the matter will, pursuant to these rules, determine the proper scope of discovery relating to financial disclosures of the parents after a hearing, submissions, and arguments by the parties. (*Id.*).

### D.  MR. LICHTENSTEIN SUES MR. CADER IN THIS ACTION

In April 2013, Mr. Lichtenstein sued Mr. Cader in this action, alleging that Ms. Bond made false statements to him and the Hong Kong Court. (Complaint at ¶26). In particular, Mr. Lichtenstein claims that Ms. Bond misrepresented to him and the Hong Kong Court that Mr. Cader made loans to her, which Mr. Lichtenstein believes were gifts. (*Id.* at ¶¶26 and 27). Mr. Lichtenstein has raised these same issues in the Hong Kong action. (*Id.* at ¶26). Mr. Lichtenstein asserts two

4

causes of action against Mr. Cader: (i) count one: conspiracy to commit fraud; and (ii) count two: aiding and abetting fraud. (Complaint at ¶¶58-74). Mr. Cader now moves to dismiss or, in the alternative, to stay this action in favor of the Hong Kong action and because each of these claims, even if they were properly before this Court (which they are not), fail to state a claim upon which relief can be granted.

**LEGAL ARGUMENT**

**I.**

**THIS COURT SHOULD DISMISS THIS ACTION OR, IN THE ALTERNATIVE, STAY THIS ACTION IN FAVOR OF THE HONG KONG ACTION**

It is well established that the principals of judicial efficiency and international comity give Federal courts the inherent power to dismiss or stay an action based upon the pendency of a related proceeding in a foreign jurisdiction. *Caspian Invest., Ltd. v. Vicom Holdings, Ltd.*, 770 F. Supp. 880, 884 (S.D.N.Y. 1991) (American courts should recognize judicial acts of foreign nations) (internal citations omitted). Based upon these standards, courts consistently dismiss or stay claims that are the duplicative of pending foreign suits. *Advantage Int'l Management v. Martinez*, 1994 U.S. Dist. LEXIS 12535, at *4 (S.D.N.Y. Sept. 2, 1994) (courts are authorized to stay or dismiss an action pending the resolution of a related proceeding in a foreign jurisdiction) (internal citations omitted).

The relevant factors in determining whether deference to a foreign proceeding is appropriate include: (i) similarity of parties and issues; (ii) the adequacy of relief available in the foreign forum; (iii) the possibility of prejudice; (iv) the temporal sequence of the filing each action; (v) the promotion of judicial efficiency; and (vi) the fairness to the parties. *Dragon Capital Partners L.P. v. Merrill Lynch Capital Servs.*, 949 F. Supp. 1123, 1127 (S.D.N.Y. 1997) (internal citations omitted). Applying these factors here, it is clear that dismissal or a stay of this action in favor of the Hong Kong action is warranted.

5

*First*, there is substantial identity of parties in the two actions. Mr. Lichtenstein -- who filed both actions -- is a party to both actions. (Complaint at ¶¶8 and 25). And Ms. Bond, Mr. Cader's alleged co-conspirator, is a party to the Hong Kong action. (*Id.* at ¶25). That Mr. Cader is not a party to the Hong Kong action is of no import. Indeed, courts have repeatedly ruled that parties need not be identical in order for one action to be dismissed in deference to an earlier action. *Dragon Capital Partners L.P.*, 949 F. Supp. at 1127 ("parties … need not be identical in order for one action to be stayed or dismissed in deference to an earlier action.") (internal citations omitted). Mr. Lichtenstein should not be heard to argue that Mr. Cader is somehow necessary to the adjudication of his parental support obligations as Ms. Bond is as fully capable as Mr. Cader of responding to matters relating to the loans.

*Second*, there is a complete identity of issues between the two actions. Both cases arise from the same set of facts, and the controversy here is squarely before the Hong Kong Court. Indeed, in advancing his claims of fraud in this action, Mr. Lichtenstein claims that Ms. Bond -- with the assistance of Mr. Cader -- made a number of misrepresentations to the Hong Kong Court. (Complaint at ¶26). And Mr. Lichtenstein has raised the issue of loans made by Mr. Cader to Ms. Bond in the Hong Kong action. (*Id.* at ¶32). In both actions, Mr. Lichtenstein seeks to challenge the amount of child support that the Hong Kong Court has awarded. (*Id.* at ¶¶32, 61, and 72). The only difference between this action and the Hong Kong action is simply in the way Mr. Lichtenstein frames his claims. In the Hong Kong action, he claims that Ms. Bond misrepresented that she received a loan from Mr. Cader, causing him to pay inappropriately high child support. (*Id.* at ¶26). In this action, he claims that Mr. Cader encouraged Ms. Bond to make these false statements to the Hong Kong court, causing him to pay inappropriately high child support. (*Id.* at ¶¶61 and 72). But Mr. Lichtenstein's artful pleading cannot obscure the complete identity of the issues in these two actions. *Caspian Invest., Ltd.*, 770 F. Supp. at 884 (claims need not be identical in order for one action

6

to be dismissed in deference to an earlier one) (internal citations omitted).  Both actions involve the same issues and seek the same relief and are sufficiently similar to allow a dismissal or stay of this action in deference to the Hong Kong action.

   *Third*, there is no evidence that the Hong Kong Court will not adequately resolve Mr. Lichtenstein's claims or that he will be prejudiced if the dispute is resolved in Hong Kong.  *First*, Mr. Lichtenstein has raised the issue of loans made by Mr. Cader to Ms. Bond in the Hong Kong action. (Complaint at ¶32).  Under Hong Kong law, there is no restriction on what type of information Mr. Lichtenstein can request from Ms. Bond, including monies that she received from Mr. Cader.  After permitting the parties a full and fair opportunity to discover information regarding one another's financial means, the Hong Kong Court will determine the appropriate level of maintenance for Mr. Lichtenstein's daughter.   Thus, the Hong Kong Court is perfectly capable of resolving Mr. Lichtenstein's claims.  *Second*, as Mr. Lichtenstein invoked the jurisdiction of the Hong Kong Court in the original action, he cannot assert that the Hong Kong Court will not afford substantial justice. Indeed, it is well established that a party, who invokes the laws of a particular jurisdiction, cannot then claim that it will suffer prejudice because the courts of that jurisdiction are unable to afford him justice.  *Dragon Capital Partners L.P.*, 949 F. Supp. at 1128 (when party invokes "the laws of a particular jurisdiction, it cannot then repudiate the courts of that jurisdiction as unable to afford justice to its claims.") (internal citations omitted).  *Third,* Mr. Lichtenstein's complaint about the Hong Kong's Court's limited discovery, even if true, does not render the Hong Kong Court inadequate.  (Complaint at ¶44).   First of all, under Hong Kong law, both parties are required to submit sworn financial statements which the other party is allowed to challenge.  And both parties can seek whatever information it wants regarding the other's financial circumstance.  Moreover, it is well established that, as a matter of law, differences in substantive or procedural law, including the availability of discovery, do not render a foreign forum inadequate.  *Scottish Air Int'l v. British*

*Caledonian Group, PLC*, 81 F.3d 1224, 1234 (2d Cir. 1996) ("some inconvenience or the unavailability of beneficial litigation procedures similar to those available in federal district courts does not render an alternative forum inadequate.") (internal citations omitted). *Finally,* American courts have held that Hong Kong is an appropriate forum to decide legal issues. *Dragon Capital Partners L.P.*, 949 F. Supp. at 1129-30 (explaining that Hong Kong Courts guarantee that litigants' rights and obligations are recognized, while litigating before them) (internal citations omitted).

*Fourth,* priority is typically given to the first filed action. *Caspian Invest., Ltd.*, 770 F. Supp. at 884-85 ("priority is generally given to the first suit filed.") (internal citations omitted). There is no dispute that Mr. Lichtenstein filed the Hong Kong action before this action. Indeed, the focus of his claims in this action is that Mr. Cader encouraged Ms. Bond to make misrepresentations to the Hong Kong Court. (Complaint at ¶26). And deference to the Hong Kong action is particularly appropriately here because Mr. Lichtenstein himself commenced the original suit in Hong Kong and therefore cannot be heard to complaint if the Hong Kong Court decides the very issue that he brought before it. *Dragon Capital Partners L.P.*, 949 F. Supp. at 1128 (a party cannot complain about the laws of the jurisdiction in which it brought suit).

*Finally,* a dismissal or stay of this action would serve the goals of judicial efficiency, judicial consistency, and fairness to the parties. In the pending Hong Kong action, the High Court will review the evidence offered, including information regarding loans made by Mr. Cader to Ms. Bond, and decide the appropriate level of support. Mr. Lichtenstein simply seeks to litigate the same issues in this case. But compelling Mr. Cader to defend claims that are before the Hong Kong Court would be a waste of judicial resources, unfair, and would raise the possibility of inconsistent rulings with respect to the same issues. *Caspian Invest., Ltd.*, 770 F. Supp. at 885 (dismissing a later filed case because allowing a subsequent suit to continue would be unfair, a waste of judicial resources, and raise the possibility of inconsistent findings).

8

Each of these factors weighs heavily in favor of dismissal or stay of this action, as this Court has the power to do, in favor of the Hong Kong action. *Caspian Invest., Ltd.*, 770 F. Supp. at 885 (courts can either dismiss or stay an action in favor of a previously filed action). Since the issues before this Court and the Hong Kong Court are identical and the Hong Kong Court will adequately address the issues presented in this action, Mr. Cader respectfully requests that this Court dismiss this action.

## II.

## THIS COURT SHOULD DISMISS THIS ACTION BECAUSE IT IS AN IMPROPER ATTEMPT TO COLLATERALLY ATTACK OF FOREIGN COURT DECISION

Under New York law, a foreign court's decree will be recognized by American courts unless it was procured by extrinsic fraud, as opposed to intrinsic fraud. *Altman v. Altman*, 542 N.Y.S.2d 7, 9 (1st Dep't 1989). Fraud is extrinsic when it is collateral to issues decided by a court and deprives a party of an opportunity to present its claim. *Tamimi v. Tamimi*, 328 N.Y.S.2d 477, 483 (2d Dep't 1972) (extrinsic fraud is collateral to the question examined in an action). Fraud is intrinsic when it relates to the very matter decided by the court. *Chenu v. Board of Trs.*, 212 N.Y.S.2d 818, 820 (1st Dep't 1961) (claim that a party committed perjury constitutes intrinsic fraud). New York courts have consistently held that a claim that ***a party provided false testimony in a foreign proceeding constitutes intrinsic fraud and is legally insufficient to set aside a foreign decree***. *Altman*, 542 N.Y.S.2d at 9 ("American courts hold that a foreign judgment cannot be attacked on the ground that it was procured by false testimony"); *Tamimi*, 328 N.Y.S.2d at 483-84 (claim that a party procured a foreign decree by false testimony cannot support a collateral attack); *Chenu*, 212 N.Y.S.2d at 820 (claim of perjury cannot sustain a collateral attack) (emphasis added).

Here, Mr. Lichtenstein attempts to collaterally attack the Hong Kong decree, alleging that Mr. Cader "permitted and encouraged Ms. Bond" to make false statements so that "Ms. Bond could

9

mislead the Hong Kong Court as to the true state of her finances." (Complaint at ¶¶67 and 73). But such an allegation of misrepresentation to a court constitutes intrinsic fraud which cannot form the basis of a collateral attack in New York. Rather, Mr. Lichtenstein (as he admittedly already has) must seek relief in the Hong Kong action. Thus, dismissal of the Complaint in this action is warranted.[3]

## III.

### THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND SHOULD BE DISMISSED

#### A. THE COMPLAINT FAILS TO SATISFY THE PLEADING REQUIREMENTS SET FORTH BY THE SUPREME COURT AND SHOULD BE DISMISSED

Even if this Court were to determine that Mr. Lichtenstein's claims are properly before it, each should be dismissed for failure to state a claim upon which relief can be granted. The Complaint attempts to state two causes of action against Mr. Cader: (i) count one: conspiracy to commit fraud; and (ii) count two: aiding and abetting fraud. (Complaint at ¶¶ 58-74). Both hinge on the thinnest of factual allegations. Indeed, the entire action is based on a series of naked conclusions, rank speculations, and unsubstantiated facts.[4]

Mr. Lichtenstein first asserts that Ms. Bond made the false representation to him that Mr. Cader loaned her money. (Complaint at ¶26). But that allegation fails to describe the representation, the circumstances of that representation, when it was made or what was said. Mr. Lichtenstein next alleges (parenthetically, no less) that Ms. Bond made the same unidentified representation in the Hong Kong proceeding. (*Id.*). But that allegation also fails to provide any salient detail of what was said to the Court, in what context and when it was said. Mr. Lichtenstein

---

[3] Mr. Lichtenstein should not be heard to argue that because the Hong Kong order of support is not a final order, these principles do not apply. Final order or not, it is well settled that that complaints of perjury allegedly committed in a foreign action should be submitted to and considered by the foreign court.

[4] Indeed, out of the seven four separate allegations in the Complaint only a small number have anything whatsoever to do with the alleged claims against Mr. Cader. The balance of the allegations is nothing more than a cynical effort to use the judicial process to smear and denigrate Ms. Bond and her family.

then alleges that the "representations are false" and the "Cash Gifts and Lease Payments ... were gifts to his longtime paramour, Ms. Bond." (*Id.* at ¶27).  Again this allegation is similarly devoid of any basis for the conclusion that the statement was false.  The only basis for this conclusion -- which underpins the entire action -- is the allegation that "no evidence has been produced demonstrating that Mr. Cader accounted for the Cash Gifts or Lease Payments as loans." (*Id.* at ¶38).  Thus, in reality, the only basis for the allegation that Ms. Bond made a misrepresentation is that Mr. Lichtenstein just doesn't believe her.[5]  This alone requires dismissal of Mr. Lichtenstein's claims.

Worse, having created a misrepresentation out of whole cloth, the Complaint goes on to allege a scheme to defraud based on nothing but speculation.  For example, the Complaint alleges "*on information and belief*" that "Mr. Cader and Ms. Bond ... have perpetuated and will continue to perpetuate their scheme to defraud ...." (Complaint at ¶37).  And "[o]n information and belief, Mr. Cader permitted and encouraged Ms. Bond to make these false misrepresentations ...." (*Id.* at ¶67).  Thus, the Complaint conjures a conspiracy out of nothing more than bare conjecture: "Ms. Bond and Mr. Cader agreed that the Cash Gifts and Lease Payments would be misrepresented to be loans;" (*Id.* at ¶64) and "Ms. Bond's and Mr. Cader's common objective to cause the Hong Kong court to order Mr. Lichtenstein to make payments that are greater than they would have been absent Ms. Bond's misrepresentation relating to the purported debt." (*Id.* at ¶66).  But there is no factual basis for these allegations.  On these thin reeds alone the Complaint rests.

These allegations do not come to close to satisfying the standards established by the Supreme Court.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

---

[5] Ms. Bond is not the only one Mr. Lichtenstein doubts. Her father, Sir John Bond, a man of international reputation, is also tarred with Mr. Lichtenstein's brush; as he alleges that Sir John "on information and belief, conspired to and did falsely represent to Mr. Lichtenstein that Sir John can no longer provide his regular monthly $2,500 support payments to his daughter." (Complaint at ¶51). Mr. Lichtenstein, of course, provides no basis for his conclusion that "Ms. Bond and her father, Sir John, conspired to and did make related false statements." (*Id.*).

11

U.S. 662, 678, 129 S.Ct. 1937, 1945, 173 L.Ed. 2d 868, 884 (2009) (internal citations omitted). The claimant must set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed. 929, 940 (2007) (internal citations omitted). The Court must then consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 1951. Where the well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–that the pleader is entitled to relief.'" *Id.* at 1950. Indeed, a plaintiff must advance factual allegations that "raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555-56. Thus, it has long been the law that a court should reject legal conclusions, unsupported inferences, unwarranted deductions, footless conclusions of law, or sweeping legal conclusions cast in the form of factual allegations. *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 270 (2d Cir. 2011) (internal citations omitted).

Here, the Complaint offers nothing more than speculation that a misrepresentation was made by Ms. Bond, speculation on "information and belief" that Mr. Cader knew of, and encouraged, Ms. Bond to make it; all followed by the conclusion that there was a scheme to defraud. (Complaint at ¶¶26, 27, 37, 38, 64, 66, and 67). The Complaint offers nothing more than the scant implication that misconduct occurred. The Supreme Court has held that such allegations are insufficient and fail to state claim upon which relief can be granted. Accordingly, dismissal of the Complaint in this action is warranted.

12

### B. COUNT TWO OF THE COMPLAINT FAILS TO STATE A CLAIM FOR AIDING AND ABETTING FRAUD AND SHOULD BE DISMISSED

Under Fed.R.Civ.P. 9(b), a party must state "with particularity the circumstances" constituting fraud. The Second Circuit has accordingly held that conclusory allegations of fraud will be dismissed under Rule 9(b). *Shemtob v. Shearson, Hammill & Co.,* 448 F.2d 442, 444-45 (2d Cir. 1971) (dismissal of fraud claim because of non-compliance with Rule 9(b)) (internal citations omitted). The Second Circuit construes Rule 9(b) strictly to protect defendants "from harm to their reputation resulting from ungrounded actions, and to give defendants notice of the precise conduct in issue." *Billard v. Rockwell Int'l Corp.,* 683 F.2d 51, 57 (2d Cir. 1982) (defendant is entitled to notice of a fraud claim) (internal citations omitted).[6]

The Second Circuit has ruled that Rule 9(b) applies to claims alleging aiding and abetting fraud. *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 292-93 (2d Cir. 2006) (Rule 9(b) applies to aiding and abetting claims). Accordingly, a party "alleging aiding and abetting claims sounding in fraud must also plead the elements of aiding and abetting with particularity." *Id.* (a party must comply with Rule 9(b) when alleging aiding and abetting) (internal citations omitted).

To state a claim for aiding and abetting fraud a plaintiff must plead: (i) existence of a fraud; (ii) defendant's knowledge of the fraud; and, (iii) that defendant provided substantial assistance to advance the fraud's commission. *Rosner v. Bank of China,* 349 Fed. Appx. 637, 638 (2d Cir. 2009) (internal citations omitted). The strictures of specific pleading are even more important "where liability for fraud is to be extended beyond the principal actors, to those who, although not participants in the fraudulent scheme, are said to have aided and encouraged its commission." *National Westminster Bank USA,* 511 N.Y.S.2d at 630.

---

[6] This requirement echoes the New York rule that "circumstances constituting the wrong [i.e. fraud] shall be stated in detail." CPLR 3016(b). "Plainly, no cause of action for fraud is made out, nor can one be effectively answered and defended, when the subjective element is summarily alleged without supporting detail." *National Westminster Bank USA v. Weksel,* 511 N.Y.S.2d 626, 630 (1st Dep't 1987).

13

> This is because the alleged aider and abettor, by hypothesis, has not
> made any fraudulent misrepresentation and should not be called to
> account for the intentional tort of another unless the circumstances
> of his connection therewith can be alleged in detail from the outset.
> The nexus between the aider and abettor and the primary fraud is
> made out by allegations as to the proposed aider's knowledge of the
> fraud, and what he, therefore, can be said to have done with the
> intention of advancing the fraud's commission.  It is not made out
> simply by allegations which would be sufficient to state a claim
> against the principal participants in the fraud.

*Id.*  Mr. Lichtenstein's allegations fail to satisfy these high standards.

*First*, the Complaint fails to properly plead the existence of an underlying fraud.  The Second Circuit has held that proof of fraud "requires a showing that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Bridgestone/Firestone v. Recovery Credit Servs.*, 98 F.3d 13, 19-20 (2d Cir. 1996) (internal citations omitted).  The Second Circuit has held that to comply with Rule 9(b), a complaint "must: (1) specific the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner, N.A.*, 459 F. 3d at 290 (internal citations omitted).

Mr. Lichtenstein has failed to allege any of the required detail.  The Complaint does not identify the specific statements Ms. Bond allegedly made to Mr. Lichtenstein, to the Hong Kong Court, or where and when these statements were made.  A fraud claim cannot stand without detailed pleading of the actual statement, as well as the time, place and speaker. *Lerner, N.A.*, 459 F. 3d at 290.  Worse, the Complaint fails to provide any factual basis for the conclusion that the alleged statements were false.  The Complaint instead only provides Mr. Lichtenstein's bald allegation that the unidentified "representations were false." (Complaint at ¶27).  That is not sufficient to state a claim upon which relief can be granted. *Reese v. McGraw-Hill Cos.*, 2012 U.S. Dist. LEXIS 83753, at

14

*4 (S.D.N.Y. Mar. 30, 2012) (plaintiff must allege facts to support the inference that the statements were false). Mr. Lichtenstein's self-serving conclusion that the loans were actually gifts does not support an inference of falsity. *Id.* Indeed, it is just as likely that the monies were as allegedly represented.

*Second*, the Complaint fails to adequately plead that Mr. Cader had actual knowledge of the alleged fraud. The only allegation of knowledge is that "[o]n information and belief, Mr. Cader permitted and encouraged Ms. Bond to make these false representations so that he could avoid United States gift taxes and Ms. Bond could mislead Mr. Lichtenstein and the Hong Kong court as to the true state of her finances." (Complaint at ¶73). But this allegation simply piles speculation atop speculation. The first speculation is that cash and lease payments were gifts -- where the Hong Kong Court, according to Mr. Lichtenstein, accepted that they were loans -- and no actual facts are pleaded which contradict that finding. The second speculation is that Mr. Cader encouraged Ms. Bond to misrepresent the gifts as loans. But again, no actual facts support this allegation. This kind of speculative pleading does not meet the standards of Rule 9(b).

As in the context of pleading a primary violation, "pleading knowledge for purposes of an aiding and abetting claim requires allegations of facts that give rise to a 'strong inference' of actual knowledge." *In Re Agape Litigation*, 773 F. Supp. 2d 298, 308 (E.D.N.Y. 2011) (quoting *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 367 (S.D.N.Y. 2007)). While pleading of scienter is somewhat relaxed under Rule 9(b), this relaxation "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *O'Brien v. National Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991) (internal citations omitted). Here, the claims of aiding and abetting are based on speculation alone -- Mr. Lichtenstein *supposes* that Mr. Cader encouraged Ms. Bond to misrepresent the nature of the payments -- but that naked supposition does not "give rise to the 'strong inference' required by Federal Rule 9(b), of actual knowledge." *Lerner*,

15

459 F.3d at 293.  Indeed, this made-up allegation of motive is entirely inadequate as it is made on "information and belief" without anything more.  The Second Circuit has held that allegations that are made on information and belief must be supported by a "statement of the facts upon which the belief is founded."  *Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997, 1003-04 (2d Cir. 1988).  Here no such support is present and the allegation fails.

 *Finally*, the Complaint fails to adequately allege substantial assistance.  Substantial assistance "exists where: (1) a defendant affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enable the fraud to proceed, and (2) 'the actions of the aider/abettor proximately caused the harm on which the primary liability *is* predicated."  *Rosner*, 349 Fed. Appx. at 639.  The only allegation here that Mr. Cader substantially assisted Ms. Bond in the alleged fraud is the naked allegation that he and Ms. Bond "have perpetuated and will continue to perpetuate their scheme to defraud."  (Complaint at ¶37).  The Complaint attempts to bolster this conclusory allegation by pleading that neither "Mr. Cader nor Ms. Bond has provided *any* evidence whatsoever – documentary or otherwise – to support the claim that the Cash Gifts or Lease Payments were loans."  (*Id.* at ¶38).  These allegations fail.

 *First*, the Complaint fails to plead that Mr. Cader's alleged actions were the proximate cause of the harm Mr. Lichtenstein claims he suffered.  And, mere "allegations of 'but for' causation are insufficient; an alleged aider and abettor will be liable only where the plaintiff's injury is a direct or reasonably foreseeable result of the defendant's conduct."  *Fezzani v. Bear, Stearns & Co.*, 592 F. Supp. 2d 410, 432 (S.D.N.Y. 2008) (internal citations omitted).  This necessary causal connection is missing here.

 *Second*, an allegation that Mr. Cader failed to provide information to Mr. Lichtenstein cannot support a finding of substantial assistance.  "Inaction on the part of the alleged aider and abettor 'ordinarily should not be treated as substantial assistance.'"  *Chemtex, LLC v. St. Anthony Enters.*, 490

16

F. Supp. 2d 536, 547 (S.D.N.Y. 2007) (internal citations omitted).   Indeed, it is well-settled that absent a "fiduciary duty or some other independent duty owed by [alleged aider and abettor] to the [plaintiff] there is no duty to disclose, and, thus, defendant's silence does not constitute the requisite 'substantial assistance' to sustain a claim for aiding and abetting fraud."   *Churchill Financial Cayman, Ltd. V. BNP Paribas*, 944 N.Y.S.2d 116, 117 (1st Dep't 2012) (quoting *Stanfield Offshore Leveraged Assets, Ltd v. Metropolitan Life Ins. Co. Credit Suisse First Boston (USA)*, 83 N.Y.S.2d 486 (2009)).   Here, Mr. Cader was under no duty of any kind to Mr. Lichtenstein, thus, his alleged failure to provide evidence to Mr. Lichtenstein cannot support a claim of aiding and abetting fraud.

*Lastly*, the allegations of substantial assistance are improperly vague.   The Complaint alleges "on information and belief" that Mr. Cader and Ms. Bond "perpetuated and will continue to perpetuate their scheme to defraud" with nothing more.   But such an unadorned allegation does not satisfy the strictures of Rule 9(b).   *Morgan v. Prudential Group Inc.*, 81 F.R.D. 418, 425 (S.D.N.Y. 1978) (naked allegation that a "defendant 'participated' in the preparation of false and misleading selling documents is at most a conclusory allegation that it "substantially assisted" or "furthered" the fraud. Such conclusory allegations do not satisfy the strictures of Rule 9(b).")   And again, the allegation is on "information and belief" without any support for the basis of either.

In sum, the second count of the Complaint fails to state a claim upon which relief can be granted and should be dismissed.

17

### C. COUNT ONE OF THE COMPLAINT FAILS TO STATE A CLAIM FOR CONSPIRACY TO COMMIT FRAUD AND SHOULD BE DISMISSED

To plead a cause of action for conspiracy to commit fraud, a New York plaintiff must allege "the primary [fraud] and four elements: (a) a corrupt agreement between two or more persons; (b) an overt act in furtherance of the agreement; (c) the parties' intentional participation in the furtherance of a plan or purpose; and (d) the resulting damage or injury." *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 425 (S.D.N.Y. 2010) (internal citations omitted). Thus, for there to be a valid claim of conspiracy to commit fraud, there must be a valid underlying fraud claim. *Missigman v. USI Northeast, Inc.*, 131 F. Supp. 2d 495, 517 (S.D.N.Y. 2001). A claim of conspiracy to commit fraud is governed by the heightened pleading requirements of Rule 9(b). *Filler v. Hanvit Bank*, 2003 U.S. Dist. LEXIS 15950, at *7-8 (S.D.N.Y. Sept. 12, 2003) (internal citations omitted). Here, specificity on all the critical elements is entirely lacking.

*First*, the claim for conspiracy should be dismissed because the Complaint fails to properly plead the details of the alleged representations and the factual basis supporting a strong inference of that the statements were false. *In Re Agape Litigation*, 773 F. Supp. 2d at 308.

*Second*, the Complaint fails to plead the details of a corrupt agreement. A claim for conspiracy to commit fraud "cannot stand where, as here, it is devoid of specific factual allegations that could support an inference that defendants knowingly agreed to cooperate in a fraudulent scheme, or shared a perfidious purpose ...." *LeFebvre v. New York Life Ins. And Annuity Corp.*, 625 N.Y.S.2d 695, 696 (3rd Dep't 1995) (internal citations omitted). At bottom, all the Complaint really alleges is that Mr. Lichtenstein *believes* that Mr. Cader gave money to Ms. Bond and encouraged her to characterize these gifts as loans. (Complaint at ¶26). But the Complaint only establishes the necessary common scheme or plan through the conclusory pleading that there was one: "*On information and belief*, Mr. Cader and Ms. Bond ... have perpetuated and will continue to perpetuate

18

their scheme to defraud …." (*Id.* at ¶37).  But this pleading falls far short of the mark.  *Agostini v. Sobol*, 757 N.Y.S.2d 555, 556 (1st Dep't 2003) (complaint for conspiracy to commit fraud dismissed where plaintiff failed to establish, other than by conclusory allegations, any common plan.)

     *Third*, the Complaint fails to plead the details of an overt act in furtherance of the conspiracy. The Complaint merely alleges that payments were made and an agreement formed, but the Complaint does not state when these acts occurred in relation to one another.  If the payments were made before any alleged agreement was made, no overt act is present.  *Lewis v. Rosenfeld*, 138 F. Supp. 2d 466, 479 (S.D.N.Y. 2001).

     *Fourth*, the Complaint fails to plead that Mr. Cader intentionally participated in a fraudulent scheme with the requisite detail which would "support an inference that defendants knowingly agreed to cooperate in a fraudulent scheme, or shared a perfidious purpose."  *Snyder v. Puente De Brooklyn Realty Corp.*, 746 N.Y.S.2d 517, 521 (3rd Dep't 2002) (internal citations omitted).  The Complaint merely alleges that Mr. Cader gave Ms. Bond gifts and *concludes* that they had agreed to do so in order to harm Mr. Lichtenstein.  But "the mere fact that otherwise lawful activities may have assisted another in pursuit of guileful objectives is not a sufficient basis for finding that he or she conspired to defraud."  *Id.*  Thus, the conclusory pleading of Mr. Cader's scienter fails.  *LeFebvre v. New York Life Ins. And Annuity Corp.*, 625 N.Y.S.2d at 696 ("When scienter is lacking, the mere fact that a defendant's otherwise lawful activities may have assisted another in pursuit of guileful objectives is not a sufficient basis for finding that he or she conspired to defraud.")

     In sum, the first count of the Complaint fails to state a claim upon which relief can be granted and should be dismissed.

19

## CONCLUSION

Based on the foregoing, Mr. Cader respectfully requests that this Court grant his motion to dismiss or, in the alternative, to stay Mr. Lichtenstein claims in this action.

Dated: May 9, 2013

Respectfully submitted,

BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, NY  10174-0208
(212) 885-5000
*Attorneys for defendant Andrew Cader*

By: _____
Seth J. Lapidow, Esq.

20