# EXHIBIT A

```
                                                                  1
    D7HBLICC
1   UNITED STATES DISTRICT COURT
1   SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
2
3   WARREN LICHTENSTEIN,
3
4              Plaintiff,
4
5        v.                              13 CV 02690 (LAK)
5
6   ANDREW CADER,
6
7              Defendant.
7
8   ------------------------------x
8                                        New York, N.Y.
9                                        July 17, 2013
9                                        9:36 a.m.
10
10  Before:
11
11                 HON. JAMES L. COTT,
12
12                                       Magistrate Judge
13
13                      APPEARANCES
14
14  ARKIN SOLBAKKEN LLP
15       Attorneys for Plaintiff
15  STANLEY S. ARKIN
16  ALEX REISEN
16
17  BLANK ROME LLP
17       Attorneys for Defendant
18  SETH J. LAPIDOW
18  MICHAEL A. ROWE
19
20
21
22
23
24
25
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
```

```
                                                                    2
        D7HBLICC
 1                 (In open court)
 2                 THE DEPUTY CLERK:  Lichtenstein v. Cader.  Counsel,
 3      state your name for the record.
 4                 MR. ARKIN:  Stanley S. Arkin and Alex Reisen of Arkin
 5      Solbakken on behalf of Mr. Lichtenstein.
 6                 MR. LAPIDOW:  Seth Lapidow and Michael Rowe Blank Rome
 7      on behalf of Mr. Cader.
 8                 THE COURT:  Good morning, everybody.
 9                 MR. LAPIDOW:  Good morning, your Honor.
10                 THE COURT:  I like seeing you all sitting at one table
11      together.  That's very symbolic.  Unfortunately, it's not as
12      symbolic as perhaps I would like.
13                 Mr. Arkin, let me ask you first, has there, in fact,
14      been a decision by the Hong Kong court?
15                 MR. ARKIN:  There is a decision by the Hong Kong
16      court.  I have a copy of it.  I received it subject to a
17      privilege from the Hong Kong lawyer.
18                 THE COURT:  What does that mean exactly?
19                 MR. ARKIN:  That's a very good question.  It's a
20      really good question because they have an extremely strict,
21      rigorous 18th Century perspective of such things.  And one of
22      the things I don't want to do, since I've been unappealing to
23      you in this court, together with my friend, is be unappealing
24      to the Hong Kong court.  And I have the thing -- I will make
25      inquiry as to whether I can produce it to Mr. Lapidow, who
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300
```

```
                                                              3
     D7HBLICC
 1   may -- Mr. Lapidow's letter suggests that he has knowledge of
 2   its findings or its holdings.  And I will seek to see if I
 3   could get the document released.  I've asked my consulate or my
 4   friend in Hong Kong to see if that was possible.
 5           THE COURT:  Is it a law or practice in that court that
 6   when decisions are issued by judicial bodies, that they are in
 7   the first instance not made public?
 8           MR. ARKIN:  This is not public.  I'm told it's
 9   privileged because it may be a domestics relations matter.  And
10   I have not delved deeply into the intricacies of their
11   privilege customs and usages.  I can tell you that they are
12   different than ours albeit they're kind of a common law
13   jurisdiction.
14           I will seek to have Colin Cohen, who is the solicitor
15   in Hong Kong, see if he can get permission to provide a copy to
16   your Honor.  I have it in my possession but I am under, again,
17   a privilege.  By the way, I have nothing to hide in the
18   decision.  There's nothing about it --
19           THE COURT:  Well, I guess what I'm not understanding
20   is why is it that you can have a copy of it, but I can't or
21   opposing counsel can't?
22           MR. ARKIN:  That is a fair question and I have no
23   answer to it other than Mr. Cohen, Solicitor Cohen, gave it to
24   me with specific instructions that it was completely privileged
25   and I must not in any way distribute it or give it to anyone.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

```
                                                                4
     D7HBLICC
 1   And I didn't question him, but I will now.
 2              THE COURT:  Well, this is one of the reasons I didn't
 3   want to adjourn today's proceeding because I wanted, among
 4   other things, to understand what the state of play was, so to
 5   speak --
 6              MR. ARKIN:  Well, I can tell you that.
 7              THE COURT:  -- with respect to this decision.  And I--
 8              MR. ARKIN:  Well, I can tell you the state of play.
 9   In my words, in my interpretation -- and I hope to make it less
10   unappealing than my last appearance -- the Court awarded
11   Ms. Bond the equivalent of 38 or 39 thousand dollars a month
12   and he awarded her, as well, the payments of tuitions and
13   medical and a driver and a variety of other emoluments which go
14   along with being the mother of the child Isabella.
15              And the Court went on to say that my client's
16   finances -- albeit we thought they were carefully and fully
17   explained.  He wasn't able to appear in Hong Kong during the
18   proceeding.  She spends, in her opinion, a good deal of time
19   justifying the absence of any depth of understanding of the
20   economics.  She relies upon the English opinion, the UK
21   opinion, which appear before they shifted jurisdictions.
22              But getting to Mr. Cader, which is that she first
23   mentions our lawsuit and then, in a later part of the opinion,
24   she says that there's no question-- or not no question.  She
25   says Mr. Cader's money, the money he gave to Annabelle Bond,
                     SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
```

```
                                                              17
     D7HBLICC
 1              THE COURT:  If you want to make an application to
 2   reconsider what I'm saying, as you did the last time, I'll hear
 3   you, but let me do what I want to do first.
 4              MR. ARKIN:  Surely.  I'll sit down then.
 5              THE COURT:  Mr. Lapidow, you made your motion in May.
 6   Mr. Arkin has since filed an amended complaint and the Hong
 7   Kong Court has now rendered a decision.
 8              Does that mean that you want to revise, modify,
 9   supplement, amend your motion papers in some way?
10              MR. LAPIDOW:  I do, and I would really like to see the
11   Hong Kong decision before I renew my application because it may
12   very well have relevance.
13              THE COURT:  I hear you on that and we can build in a
14   schedule which I hope will allow for you to do so.  Because I
15   think another order, to the extent I have any authority to do
16   so, is to direct Mr. Arkin to make best efforts to get a copy
17   of that decision to you and to me.  And if it means making an
18   application that it be maintained under seal in this Court
19   until such time as it is made public in Hong Kong, then so be
20   it.  But it seems to me that it would be relevant to have that
21   decision before the Court in any event.
22              MR. ARKIN:  I'll do it.
23              MR. LAPIDOW:  I was going to suggest, your Honor, that
24   we would be perfectly willing to file whatever papers we file
25   under seal with the Court if that solves any -- or enter into a
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

```
                                                                   18
    D7HBLICC
 1  protective order.  I'm willing to do whatever needs to be done.
 2  We certainly are happy to do whatever to keep it as private as
 3  possible.
 4            THE COURT:  Well, I obviously don't have authority to
 5  direct the Hong Kong Court to do anything with its opinion.  It
 6  is going to do whatever it's going to do consistent with Hong
 7  Kong law.
 8            But, Mr. Arkin, if you can have Mr. Lichtenstein's
 9  counsel in the Hong Kong proceeding make whatever application
10  is necessary to make the Hong Kong decision available to this
11  Court and to Mr. Lapidow as part of these proceedings.  Whether
12  it needs to be submitted pursuant to a protective order and
13  maintained under seal, if that's necessary, obviously I'll sign
14  such order that the parties can submit or you can stipulate to
15  it or whatever.
16            So I know you want to speak to larger things, but
17  let's just --
18            MR. ARKIN:  No, to that particular thing absolutely I
19  will make that address or request this morning as we leave your
20  court.
21            THE COURT:  So why don't we say this, because I think
22  this is probably realistic.  It's July 17th now.  Why don't we
23  say that you'll renew your motion papers 30 days from now.
24            Is that sufficient or do you need more time?
25            MR. LAPIDOW:  I was going to suggest two weeks from
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```